FRED G. BIRCHMEIER

     VS  NO. 7354

ROBERT TEAL

ROBERT TEAL JR., 3RD. OPPONENT

CHARLES F. CLAIBORNE, JUDGE.

June 17th. 1918.

CHARLES F. CLAIBORNE, JUDGE.

On October 28th. 1912 plaintiff obtained against the defendant Robert Teal a judgment for $130.00. On April 28th. 1916 he issued an execution and caused the seizure of one mare, one horse, one mule, three dump carts, one spring wagon, one furniture wagon and two sets of harness on the premises No. 818 Belleville Street. On May 16th. 1916 Robert Teal Jr., son of defendant, intervened to oppose the seizure, and claimed the ownership of all the property seized.

Robert Teal Jr., was born on July 14th. 1897; he was therefore eighteen years and ten months old on the day on which he filed his opposition. He had been emancipated by judgment. He has lived all his life with his father and mother.

He alleged that he was the owner of the property seized which was of a value of $325.00; that he purchased the same with his own earnings from the following persons on the following dates:

The mare from Joseph Lorenz on April 10th. 1914.

The horse from Charles Montelbano on May 1913.

The mule from Wm. Happycross on December 24th. 1915.

The three dumpcarts from Wm. Happycross on December 24th. 1915, from Joseph Lamana in September 1912, and from Ernest Tarleton on May 21st. 1914.

The spring wagon from Joseph Lorenz in April 1914 and the furniture wagon from Jos. Rumore in August 1911, and the harness from Happycross on December 24th. 1915, and from Lorenz in April 1914.

It will thus be seen that, with the exception of one dumpcart and the furniture wagon, all the other articles were purchased at a date subsequent to that on which the judgment

201

was rendered against Robert Teale.

He further alleged that he filed with the Sheriff his affidavit of ownership; that notwithstanding said affidavit the Sheriff maintained his seizure and advertised the property for sale; that he was unable to furnish security and enjoin the sale. He prayed to be recognized as the owner of the property seized and for judgment in his favor for the value of the property, say $325.00.

To this third opposition the plaintiff Birchmeier answered denying that the opponent Robert Teale Junior was the owner of the property seized and asserting that the defendant, Robert Teale, was the owner thereof; he also alleged that the property seized had been sold by the Sheriff for the price of $151.75.

There was judgment in favor of the intervenor ordering the payment to him of this sum of $151.75. From this judgment plaintiff has appealed.

In support of his pretentions the third opponent produces a bill of sale and receipt from Lorenz for $50.00 for one mare and one wagon, together with the testimony of Lorenz who is his uncle that he gave him the receipt on the day of the sale, although the boy paid him only a couple of weeks afterwards.

Another receipt for one bay horse for $45.00, undated signed by Montalbano. That receipt was also written some time after the payment, and is corroborated by the testimony of Montalbano.

A third receipt for one dump cart for $17.00 signed by Ernest Tarleton in favor of Robert Teal Jr. The "Jr." seems to have been added at a subsequent time. Tarleton swears he wrote the receipt. He would not swear that he wrote the "Jr." but as he says, he wrote the receipt, he must have written that too.

A fourth receipt for one mule and cart for $65.00 by Wm. Happycross or Habighout in favor of Robert Teal Jr. The "Jr." in this receipt seems also to have been added, as there is a period mark after the word "Teal" in two places where it

202

occurs. Habbicross is dead.

Teal Jr. swears he bought the horses and wagons as setforth in his petition; that his father had no interest in them at all; that he bought them with his own money. He thus recited the origin of his means. Mrs. Ruprich gave him one cow in 1904; he was then seven years old; he raised this cow, and she brought him more cows, until he got five; he sold milk; feed went so high that in 1910 (he was then 13) he sold out and bought a horse from Lamana for $100.00, $25.00 cash and $5.00 a week; he used the horse for drey work; Lamana gave him several other horses on the same terms. He produced a bill entitled "R. J. Teal Jr. dealer in wood, coal and ice" and says that that was his business in 1912. The bill is made against the Johnson Iron Works, but is dated June 16th. 1916, one month after his third opposition herein. He went to a private school at night. He had a license for his carts in his name for each of the years from 1910 to 1916; he made the affidavit himself to get them; the Clerk would swear him and not the Notary; at the time of the seizure he was working at the boiler trade at Johnson Iron Works; his younger brother 19 years old used the animals; his brother lives with his father and mother also; he remembers calling at the office of Mr. Rosser with his mother a few days after the seizure; the conversation was between him and Mr. Rosser and not between his mother and Mr. Rosser; his mother was sitting on the outside of the office; he asked Mr. Rosser to come to some agreement and that he would square the bill off, and Mr. Rosser refused; he said: "Mr. Rosser, I come to see you about releasing the stock, and I am willing to give you so much on this account and make a settlement"; Mr. Rosser refused to release a horse and wagon to enable them to deliver ice and he hired a horse which his brother used to deliver the ice; there were no names on the carts and wagons; he was painting a furniture wagon and there was only one side painted, "R. Teal Jr"; he would buy his feed from several stores for cash; he had no bank account at that time; his brother was in his employ

for what he could get for him; no regular wages; when his father had no work he would give him a job, he would pay him in proportion to the money he made; his father was a ship-carpenter; intervenor has been working in the foundry since 1915; when he got a good drayage job he would quit; his present occupation is boiler-maker; on the day of the seizure he was in Lafayette; he was away two weeks and a half patching a boiler. He has lived with his father and mother since his birth.

On the other hand plaintiff Birchmeier produces an affidavit signed by intervenor in March 1915 before Shields, Notary, reciting that Mrs. Teal is engaged in the business of wagons for hire at No. 818 Belleville Street and that the gross receipts for said business during the year 1914 amounted to $740.00.

He also produced an affidavit signed by "Mrs. R. Teal" before the same Notary in March 1914 declaring that she is engaged in the business of two wagons for hire at 818 Belleville and that the gross receipts of said business (for the year 1913) amount to $700.00

A third affidavit signed by intervenor before Vidrine Notary, in February 1913, for the license for the year 1913 in same name.

A fourth affidavit made in March 1912 by Mrs. Robert Teal for two wagons to hire at 803 Slidell Avenue.

Plaintiff also introduced in evidence a record of the Second City Court entitled "D. Frolicher vs Mr. & Mrs. Robert Teal No. 3499 filed in 1911 in which plaintiff sued for repairs to a harness for $2.20 and obtained judgment.

Also a record No. 3655 of the same court entitled Robert Teal vs Frank Nefas filed November 7th. 1912, in which the petition is signed by Robert Teal, the defendant herein, who was suing for $3.50 for hauling furniture.

George W. Kobalt is a deputy constable of the Second City Court for the last ten years; he knows Robert Teal Sr.

204

and Jr.; a man by the name of Hulyhorst put a claim in his hands against Robert Teal Sr., for the price of a mule, cart, and harness for $50.00; he called on Mr. & Mrs. Robert Teal Sr., who promised to send him $5.00 a week as he did not want a constable to call at his home; they sent him $20.00. Habihorst died and the collection was taken out of his hands; he saw several wagons in the lot opening on Slidell Avenue with the name "R. A. Teal".Belleville Street; he did not know Robert' Teal Jr. in the transaction and never collected anything from him; neither Mr. nor Mrs. Teal said the money was due by their son.

George G. Brunssann says the name "R. Teal" was on the wagon.

Lou Lahare swears he saw the name"R. Teal" on the ice wagon; he passes in front of the house every morning.

James B. Rosser attorney for plaintiff testifies that Mrs. Teal and the intervenor called at his office a few days after the seizure; that Mrs. Teal sat nearest to him and did all the talking; that the object of her visit was to get his consent to release the seizure and that she would pay a certain amount every month; but that the amount was so small that he could not agree to it; that the intervenor did not say a word to him except good day.

George P. Platt a member of the bar, testified that Mrs. Robert Teal and the intervenor called upon him; Mrs. Teal had most to say; she wanted to get one team released so as to deliver the ice; if the son did not get one of the teams he would be greatly embarrassed, he asked Mr. Rosser to allow the release which he did; Mrs. Teal asked if something could not be done is she did not own the stuff; after he told them what should then be done, Robert Teal Jr. said his mother did not own it, he owned it, and he could prove it by receipts.

The evidence does not persuade us of the merits of intervenor's demand. The origin and progress of his means read like fiction. His management of a business and success

while so young are out of the ordinary. The multipilcation of his resources seems exagerated, if we consider that they must have been reduced in a measure by his living expenses. If we give full faith and credit to the receipts he has exhibited, although a part of them excite suspicion, it might well be that they were taken in his name to shield the animals from the pursuit of his father's judgment creditor. However subject to doubt his claims are, he might have succeeded, had the veracity of his testimony been maintained throughout. But while he swears he took out a license in his name and made affidavits himself for each of the years 1910 to 1916 the documentary evidence establishes that the affidavits were made by and for his mother Mrs. R. Teal, and the licenses taken out in her name. Three witnesses swear that the name "R. Teal" was painted upon the wagons.

It appears conclusively also that, after the seizure the intervenor called at the office of plaintiff's attorney. H did not then set up title to the property seized and demand its release, as a matter of right, but solicited, as a favor, its release upon promise of a gradual settlement of the judgment. His visit to the attorney Platt seems to have had a similar object.

Another damaging feature of intervenor's case is his failure to have produced the testimony of Robert Teal, Senior. It is not natural that a father who sees the hard-earned property of an industrious and thrifty son seized to pay his debt should callously stand by and not raise his voice to save it, if it was in his power so to do, unless Robert Teal the father is made of material different from that of other parents, which we cannot presume; nor is Mrs. Teal heard to expalin why the licenses were taken in her name.

It has been held that when a party fails to produce a material witness, the presumption is that he would testify against him. 35A 694; 37A 29; 38A 779; 39A 426, 880; 41A 866; 51A 320; 52A 1719; 11 Am. & E.E. Law p 503; 22nd. id p 1257.

It is the jurisprudence that where a sale is attacked as simulated the testimony of the vendee alone is not sufficient to sustain its reality unless some good reason is given for not producing the vendor. 33A 1064; 41A 735 (740) 51A 324.

For these reasons the judgment herein is reversed and set aside; and it is now ordered that there be judgment in favor of the plaintiff herein Frederich G. Birchmeier and against the intervenor and third opponent Robert Teal, Junior, rejecting his demand at his cost in both courts.

June 17th. 1918.